**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JULIUS BOWDITCH, <br><br> Plaintiff, <br><br> v. <br><br> FORDHAM UNIVERSITY and OSWALDO HUGO BENAVIDES, <br><br><br> Defendants. | **COMPLAINT** <br><br> Docket No.: 23 CV 4001 <br><br><br> **JURY TRIAL DEMANDED** |

Now comes Plaintiff Julius Bowditch, and for his Complaint against Defendants Fordham University and Oswaldo Hugo Benavides alleges as follows:

## INTRODUCTION

1. This action arises out of the repeated pattern of sexual harassment by Defendant Oswaldo Hugo Benavides ("Benavides"), which Plaintiff Julius Bowditch ("Bowditch") was forced to endure. This ongoing pattern of harassment culminated in an incident where Benavides sexually assaulted Bowditch.

2. Benavides' actions occurred in connection with, or during, University-sponsored programs, activities, and events at Fordham University ("Fordham").

3. Benavides used his position as Bowditch's mentor and grant supervisor to harass and perform unwelcomed sexual behavior on Bowditch.

4. Benavides' acts were committed within the scope of his employment with Fordham University.

5. When Fordham learned that Bowditch was contemplating a civil action against Fordham, it retaliated against him by, at times, removing him from its course offerings, seeking to reduce the number of classes taught by Bowditch, and refusing to provide reasonable accommodations to him.

6. As a result, Bowditch suffered and continues to suffer from physical and emotional injuries, and significant economic loss.

## PARTIES, JURISDICTION, AND VENUE

7. Plaintiff Bowditch is a resident citizen of and domiciled in the state of Maryland.

8. Defendant Fordham University is a domestic non-profit corporation that functions as a private educational institution and is located in Bronx, New York and New York, New York. Fordham University is a recipient of federal funds under Title IX, 20 U.S.C. §§ 1681-1688 ("Title IX").

9. Defendant Benavides is a resident citizen of the state of New York, where he was employed by Fordham University as a tenured professor and previously held the position of department chair. At all times relevant, Defendant Benavides was a supervisor of Plaintiff Bowditch.

10. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, because there is a complete diversity of citizenship between Bowditch and Defendants, and the amount in controversy exceeds $75,000.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1)-(2) because at least one defendant resides in this judicial district and a substantial part of the events giving rise to this claim occurred in this judicial district.

## FACTUAL BACKGROUND

12. Plaintiff Bowditch first met Defendant Benavides during his first semester freshman year as an undergraduate student at Fordham when Bowditch took Introduction to Cultural Anthropology, which Benavides taught.

13. Throughout Bowditch's time as an undergraduate at Fordham, Benavides became a mentor to him. Bowditch and Benavides conducted an independent study together. Benavides was Bowditch's honors thesis and undergraduate research grant adviser. Further, Benavides wrote letters of recommendation for Professor Bowditch's graduate school applications.

14. In the Fall of 2020, after receiving his master's degree from the University of Chicago, Bowditch contacted Benavides, who at the time was the chair of the Department of Sociology and Anthropology at Fordham. Benavides offered Bowditch a position as an adjunct professor at Fordham, which Bowditch accepted.

15. Bowditch began teaching in the Spring 2021 semester.

16. Benavides would quickly acquire a large amount of influence and control over Bowditch's academic and professional career. By the Fall of 2021, Bowditch was teaching two Anthropology courses with Benavides' oversight and was also relying on Benavides to help prepare applications for a doctoral program. Further, Benavides became the lead writer and was in charge of a project for a grant proposal that was written by Bowditch.

17. Bowditch was also relying on the assistance and recommendations of other colleagues, many of whom were friends of Benavides, to pursue applications for a doctoral degree in anthropology.

18. Bowditch's program, "Decolonizing Anthropology Module Program," was funded by Fordham's Teaching Race Across the Curriculum ("TRAC") grant. Because Bowditch was an adjunct professor at the time, he needed a full-time faculty member to serve as the lead writer and sign the grant request. In addition, the Department Chair was required to sign the request. Benavides signed the request in both capacities, making him the ranking faculty member on the team.

19. This request was granted by the Office of the Chief Diversity Officer, and Bowditch worked with Benavides and another faculty member to design Blackboard modules and plan a series of guest lectures. It is within the context of this program that Benavides committed a pattern of harassment and misconduct that culminated in the violent sexual assault on Bowditch.

20. On or around March 9, 2022, following a guest lecture presented as part of the "Decolonizing Anthropology Module Program," Bowditch and Benavides, attended a dinner with the guest lecturer and other faculty that was funded by Fordham's TRAC grant.

21. At the dinner, Benavides referenced an affair he had with another faculty member at Fordham.

22. After the dinner, Bowditch found himself alone with Benavides. Benavides praised Bowditch's work on the program. At that time, Benavides made suggestive comments and attempted to kiss Bowditch.

23. The same night, on the subway ride home, Benavides attempted to grope Bowditch in a sexual manner by caressing Bowditch's inner thigh and attempting to touch Bowditch's groin. Though Bowditch tried to avoid Benavides' advances, he did not want to confront him for fear of jeopardizing his employment and academic development.

24. On or about March 28, 2022, Bowditch was present in the department office with Benavides, a guest lecturer who was presenting a lecture for the Department of Sociology and Anthropology's Global Studies Consortium, and other Fordham faculty. Benavides, the guest lecturer, and the other faculty members discussed a colleague of theirs from their time at the CUNY Graduate Center who had been quietly let go from his institution for inappropriate sexual conduct with a student. Benavides asked the group if they would believe an allegation like that made against Benavides. When another faculty member stated in substance that they would not if the allegation was made by a woman, the group laughed. Bowditch sat by uncomfortably given his experience with Benavides.

25. On or about April 27, 2022, after the second guest lecture of the program, Bowditch and Benavides again attended a dinner that was funded by Fordham's TRAC grant. During the dinner, Benavides looked at Bowditch and started stroking his drink like he was stimulating a penis. Although Bowditch attempted to ignore this gesture, it made him extremely uncomfortable.

26. After the dinner concluded, Benavides acted distant and cold to Bowditch. When Bowditch asked Benavides why he was acting this way, Benavides complained that Bowditch was no longer friendly towards him and that Bowditch was acting distant.

27. Benavides' accusation was a way to retaliate, groom, and manipulate Bowditch into desired behavior. Plainly, Benavides indicated to Bowditch that if Bowditch did not behave a certain way to him, Benavides' attitude, and thus his academic and professional support, could change for the worse.

28. On or about May 11, 2022, Bowditch and Benavides attended a dinner at Benavides' suggestion to celebrate the renewal of Fordham University's TRAC grant. At the dinner they discussed Fordham business. Bowditch discussed concerns he had about the grades he was assigning for the Spring 2022 semester and asked Benavides for professional advice. During this dinner, Benavides asked Bowditch if he was scared of him. Further, Benavides made comments to Bowditch about how special their relationship was.

29. After dinner, Benavides suggested they continue drinking. Benavides further suggested that they go to one of their apartments to save money, and suggested Bowditch's apartment as Benavides' apartment was too cramped.

30. At one point, Bowditch contacted another former student of Benavides with whom Bowditch was friends, to arrange to meet at a bar to avoid being alone with Benavides. Bowditch's friend was unavailable.

31. On the subway ride to Bowditch's neighborhood, Benavides touched Bowditch in a sexual manner similar to that on or about March 9, 2022. Bowditch was explicit that he did not want anything physical to happen and did not consent to being touched.

32. En route to his apartment, and as a means to protect himself, Bowditch asked his roommate to join them.

33. At the apartment, and regardless of the presence of Bowditch's roommate, Benavides continued to touch Bowditch inappropriately, pulling him onto his lap and attempting to kiss Bowditch on his mouth.

34. In the early morning hours of May 12, 2022, concerned about Benavides' behavior, Bowditch and his roommate decided that Benavides should leave. Because it was almost 2:30 a.m., Benavides asked if he could stay in the apartment until 5:00 a.m. because of the limited subway schedule. Bowditch agreed, expecting Benavides to sleep on the couch.

35. Bowditch went to the bathroom to change and get ready for bed, and returned to his bedroom to find Benavides sleeping in a corner of the bed. Thinking the threat was over, Bowditch fell asleep.

36. Shortly thereafter, Bowditch was awakened by Benavides, who was touching Bowditch's groin. Benavides went into Bowditch's underwear, and started to stroke Bowditch's penis. Because Benavides has significant control over Bowditch's career and livelihood, Bowditch hoped that if he pretended to be asleep, Benavides would stop, and a career-threatening incident could be avoided. But Benavides did not stop. In fact, he became even more aggressive, pulling down Bowditch's pants.

37. Benavides sexually assaulted Bowditch by performing oral sex on Bowditch, making forcible contact with Bowditch's anus, and attempting to force Bowditch to touch Benavides' penis.

38. Bowditch did not consent to any of these acts by Benavides. When Bowditch physically resisted, Benavides became more aggressive, getting on top of Bowditch's legs and holding his wrist.

39. Bowditch was finally able to get away from Benavides, ran into his roommate's room, and locked the door.

40. Because of Benavides' pattern of sexual harassment, including *quid pro quo* and hostile work place sexual harassment, the violent sexual assault, the abuse of power, grooming, and psychological manipulation, Bowditch suffered severe emotional harm.

41. Benavides' actions traumatized Bowditch.

42. Benavides' actions also irreparably damaged Bowditch's developing future in academia by jeopardizing his future at Fordham and placing him at odds with Benavides and other colleagues whose help Bowditch was relying on to pursue greater academic achievement.

43. Following the assault, Bowditch immediately filed complaints with Fordham under its Title VII and Title IX policies.

44. Fordham retained private attorneys to investigate the Title VII complaint.

45. On or about August 18, 2022, the investigation concluded that Benavides violated Fordham's Title VII policies.

46. In addition, Fordham initially rejected Bowditch's Title IX complaint on July 26, 2022, claiming none of Benavides' acts were done in connection with Fordham's programs, activities, or events.

47. On August 2, 2022, Bowditch successfully appealed, and the Title IX complaint proceeded.

48. After the Title VII investigation concluded in Bowditch's favor, Fordham encouraged Bowditch to withdraw his Title IX complaint.

49. Bowditch refused, and the Title IX investigation continued.

50. As of September 2022, Bowditch was scheduled to teach two courses at Fordham during the Spring 2023 semester.

51. On or about November 1, 2022, Fordham was served with a letter raising the prospect of a civil action.

52. Unbeknownst to Bowditch, he was removed from the course schedule for the Spring 2023 semester.

53. When he learned this fact in December 2022, Bowditch was told by Fordham personnel that he failed to respond to an e-mail confirming he would teach in the Spring 2023 semester.

54. This Fordham personnel later admitted that Bowditch was never sent such an e-mail.

55. Fordham next offered to allow Bowditch to teach one class in person during the Spring 2023 semester.

56. Due to the ongoing emotional trauma and the anxiety of returning to Fordham and facing colleagues who were friends of Benavides, Bowditch requested to teach the course by remote means. Fordham refused.

57. Starting in January 2023 and continuing into February 2023, Bowditch, through counsel, entered into negotiations for the Fall 2023 semester.

58. Because of the Title IX investigation, several faculty members who were friends and associates of Benavides were interviewed and learned of Bowditch's complaint against Benavides.

59. Bowditch requested to teach courses through remote means to accommodate his emotional trauma, anxiety, and concerns about other faculty member's response to the complaint.

60. Fordham offered Bowditch only one course, to be taught in person, meeting on Wednesday mornings between 8:30 a.m. and 11:15 a.m.

61. Bowditch offered to provide medical documentation of his anxiety if it would allow an accommodation to teach through remote means. Again, Fordham refused.

62. On or about February 16, 2023, Bowditch was advised that Benavides resigned.

63. Benavides' resignation heightened Bowditch's anxiety about confronting associates of Benavides on campus. In addition, there were no protections put in place to prevent Benavides or any one else from approaching Bowditch either on campus or in New York City. Fordham refused to consider these circumstances.

64. Fordham also refused to disclose the circumstances of Benavides' resignation to Bowditch, claiming that Fordham does not disclose information about current and former employees.

65. Fordham caused Bowditch further emotional injury by refusing to advise Bowditch, the victim of a violent sexual assault, about the resignation of a perpetrator which Fordham itself concluded had engaged in violations of its sexual harassment policies.

66. To date, Bowditch has not returned to teaching at Fordham.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

67. On February 24, 2023, Bowditch filed a complaint with the United States Equal Employment Opportunity Commission against Fordham University.

68. This Complaint is currently pending.

69. Bowditch will amend his Complaint to include claims under federal law following his receipt of a right-to-sue letter.

70. Prior to the commencement of this action, Plaintiff served a copy of this complaint upon the New York City Commission on Human Rights and the Corporation Counsel of the City of New York on May 12, 2023, in accordance with N.Y.C. Admin. Code § 8-502(c).

## LEGAL CLAIMS

71. Plaintiff adopts and incorporates the previous paragraphs as if fully set forth herein.

72. Bowditch endured an ongoing pattern of sexual harassment from Benavides, a mentor and senior faculty member with great influence and control over Bowditch's young career. This harassment culminated in Benavides sexually assaulting Plaintiff Bowditch by force.

73. Upon information and belief, Benavides' pattern of sexual harassment and misconduct goes beyond the acts and behavior directed towards Bowditch, and encompasses other members of Fordham University's faculty, staff, and/or student body.

74. Indeed, Benavides joked in the Department Office, in the presence of other faculty, about having an illicit affair.

75. The pattern of sexual harassment and misconduct by Benavides occurred in connection with, or during, University-sponsored programs, activities, and events, and/or had a

11

continuing effect on campus or a University sponsored program, activity, or event. Specifically, Benavides' actions, as described above, took place during functions and events that were related to, and were a continuation of, Fordham events. The subject matter of these functions and events were directly related to lectures and/or programs within Fordham University. Further, these events were paid for using Fordham University funds.

**COUNT I**
**Common Law Assault and Battery**
**Defendants Benavides and Fordham University**

76. Plaintiff adopts and incorporates the previous paragraphs as if fully set forth herein.

77. As described more fully above, each separate instance that Benavides sexually harassed and/or assaulted Plaintiff Bowditch constitutes a battery.

78. On or around March 9, 2022, April 27, 2022, and May 11, 2022, Defendant Benavides intentionally made harmful and offensive contact with Plaintiff Bowditch without Plaintiff Bowditch's consent.

79. These acts constituted sexual assault, sexual abuse, and forcible touching as defined by New York law.

80. As described more fully above, Defendant Benavides' pattern of conduct routinely and continually placed Plaintiff Bowditch in apprehension of immediate harm.

81. These acts were committed within the scope of Benavides' employment with Fordham University.

82. As a direct and proximate cause of this harmful and offensive contact, Plaintiff Bowditch suffered economic, physical, and emotional injuries.

## COUNT II
## Sexual Abuse and Sexual Assault
## **Defendants Benavides and Fordham University**

83. Plaintiff adopts and incorporates the previous paragraphs as if fully set forth herein.

84. Plaintiff Bowditch was subjected to sexual harassment, and ultimately assault, by Defendant Benavides in connection with, and during, Defendant Fordham University-sponsored programs, activities, and events, and/or had a continuing effect on campus or a Fordham University-sponsored program, activity, or event.

85. As described more fully above, Defendant Benavides, while acting in the scope of his employment, engaged in a pattern of conduct including touching Plaintiff Bowditch's genitalia and body, forced oral sex, holding down Plaintiff Bowditch during the sexual assault, and unwanted kisses. Defendant Benavides committed these acts intentionally, knowingly, and recklessly for his own gratification.

86. These actions and behavior of Defendant Benavides were continuous.

87. As a direct and proximate cause of the sexual abuse and assault engaged in by Defendant Benavides, and the deliberate indifference that Defendant Fordham University demonstrated in taking no action to remediate or address the harassment, Plaintiff Bowditch suffered economic, physical, and emotional injuries.

## COUNT III
## Negligence/Gross Negligence
## **Defendant Fordham University**

88. Plaintiff adopts and incorporates the previous paragraphs as if fully set forth herein.

89. Defendant Fordham University owes its student body, faculty, and employees, including Plaintiff Bowditch, a duty to hire and retain proper individuals to act on its behalf, to

13

supervise those individuals appropriately, and to exercise reasonable care in its hiring, retention, and supervision of its employees.

90. At all times relevant, Defendant Benavides is an employee of Defendant Fordham University.

91. Defendant Fordham University knew and/or should have known of Defendant Benavides' propensity to sexually harass and/or assault Fordham University students and employees, including Plaintiff Bowditch.

92. Defendant Fordham University breached its duty to Plaintiff Bowditch by failing to exercise reasonable care in its hiring, retention, and supervision of Defendant Benavides. Specifically, Defendant Fordham University neglected to address the ongoing harassment and abuse that Plaintiff Bowditch was subjected to by Defendant Benavides.

93. This sexual harassment and abuse occurred in connection with and during University-sponsored programs, activities, and events, and/or had a continuing effect on campus or a Fordham University sponsored program, activity, or event. Defendant Benavides' conduct occurred during and in connection with events funded by Defendant Fordham University.

94. As a direct and proximate cause of Defendant Fordham University's breach, Plaintiff Bowditch suffered economic, physical, and emotional injuries.

**COUNT IV**
**New York Executive Law § 296(1) – Sexual Harassment**
**Defendants Benavides and Fordham University**

95. Plaintiff adopts and incorporates the previous paragraphs as if fully set forth herein.

96. At all times relevant, Plaintiff Bowditch was a male employee of Defendant Fordham University, within the meaning of New York Executive Law § 296 and belongs to the class of employees protected under the statute.

97. Defendant Fordham University is an employer within the meaning of New York Executive Law § 296.

98. At all times relevant, Defendant Benavides was an employee of Defendant Fordham University and was the chair of the Department of Sociology and Anthropology. Defendant Benavides is a supervisor of Plaintiff Bowditch.

99. Defendant Benavides' conduct towards Plaintiff Bowditch constitutes *quid pro quo* sexual harassment. Defendant Benavides maintained extensive control over Plaintiff Bowditch's academic and professional advancement. Defendant Benavides used this control in order to make frequent sexual remarks and advances and, ultimately, sexually assault Plaintiff Bowditch.

100. Defendant Benavides' conduct towards Plaintiff Bowditch constitutes hostile work environment sexual harassment. Defendant Benavides' unwanted touching and/or sexual abuse and assault, obscene gestures, jokes, and other conduct were severe and pervasive. This conduct subjected Plaintiff Bowditch to anxiety and distress regarding his advancement at Fordham and in his career in academia.

101. At all relevant times, Defendant Benavides held a supervisory role over Plaintiff Bowditch.

102. Throughout the pattern of sexual harassment by Defendant Benavides, he implicitly and explicitly indicated to Plaintiff Bowditch that if he did not behave a certain way to him,

his attitude, and thus his academic and professional support, could change for the worse. Defendant Benavides repeatedly exercised his power over Plaintiff Bowditch from an academic and professional standpoint, creating a situation where Bowditch felt that if he did not allow Benavides to treat him in the manner that he did, he would be subjected to adverse employment action, including but not limited to termination, failure to promote, reassignment with significantly different responsibilities, or a change in benefits.

103. Upon information and belief, Defendant Fordham University knew or should have known about Defendant Benavides' pattern of conduct. Indeed, Defendant Benavides spoke openly about an affair he had with another faculty member, and joked about receiving an allegation of prohibited sexual conduct with other employees of Defendant Fordham University in its offices.

104. Upon information and belief, due to the continuous nature of this harassment, as well as Defendant Benavides' other acts and behavior of this nature, Defendant Fordham University had knowledge of the underlying facts of the relationship between Defendant Benavides and Plaintiff Bowditch as to interpret a substantial danger to Plaintiff Bowditch. This knowledge was adequate to have allowed Defendant Fordham University to reasonably respond with remedial measures to address the harassment.

105. Despite having knowledge of this relationship, Defendant Fordham University acted deliberately indifferent to it by not taking any steps to remediate or address the harassment.

106. As a direct and proximate cause of the sexual harassment and assault engaged in by Defendant Benavides, as a supervisor of Plaintiff Bowditch, Bowditch suffered economic, physical and emotional injuries.

## COUNT V
### New York Executive Law § 296(1)(e) – Retaliation
### Defendant Fordham University

107. Plaintiff adopts and incorporates the previous paragraphs as if fully set forth herein.

108. As described more fully above, Plaintiff Bowditch pursued complaints through Defendant Fordham University under both Title VII and Title IX. These complaints apply to conduct also prohibited under New York law.

109. Plaintiff Bowditch continued his complaint against Defendant Benavides despite being urged to withdraw it by Defendant Fordham University.

110. Plaintiff Bowditch also raised the prospect of civil litigation against Fordham University.

111. Defendant Fordham took adverse employment action against Plaintiff Bowditch as a result of his opposition to conduct prohibited under New York law, including filing a complaint, testifying, or assisting in a proceeding under New York Executive Law § 296(1).

112. As described more fully above, Defendant Fordham University removed Plaintiff Bowditch from its course schedule, and later offered him reduced course work and refused him reasonable accommodations.

113. As a direct and proximate cause of this retaliation, Plaintiff Bowditch suffered economic loss, and physical and emotional injuries.

## COUNT VI
### Intentional Infliction of Emotional Distress
### Defendants Benavides and Fordham University

114. Plaintiff adopts and incorporates the previous paragraphs as if fully set forth herein.

115. As described more fully above, each separate instance of Benavides sexually harassed and/or assaulted Plaintiff Bowditch constitutes a battery.

116. Defendant Benavides engaged in extreme and outrageous conduct, to wit, a pattern of sexual harassment, sexual abuse, sexual assault, and psychological manipulation, with the goal of utilizing Plaintiff Bowditch's employment and future prospects to engage in unwanted sexual favors.

117. These acts were committed within the scope of Benavides' employment with Defendant Fordham University.

118. Defendant Fordham University engaged in a pattern of extreme and outrageous conduct, to wit, retaliating against the victim of a sexual assault, the withholding of employment and a refusal to disclose the circumstances of Defendant Benavides' resignation, to cause Defendant Bowditch emotional harm.

119. As a direct and proximate cause of this conduct, Plaintiff Bowditch suffered economic, physical, and emotional injuries.

## COUNT VII
### Violations of New York City Human Rights Law, N.Y.C. Admin. Code § 8-107
### Defendants Benavides and Fordham University

120. Plaintiff adopts and incorporates the previous paragraphs as if fully set forth herein.

121. As described more fully above, Defendant Benavides engaged in unlawful discriminatory practices prohibited by N.Y.C. Admin. Code § 8-107(1)(a), including but not limited to,

discriminating against Plaintiff Bowditch based on gender, sexual health decisions, partnership status, and/or sexual orientation, and such discriminatory conduct affected the terms, conditions, and privileges of Plaintiff Bowditch's employment.

122. These violations were committed within the scope of Defendant Benavides' employment with Defendant Fordham University.

123. As described more fully above, Plaintiff Bowditch engaged in several acts protected by N.Y.C. Admin. Code § 8-107(7).

124. As described more fully above, Defendant Fordham University retaliated against Plaintiff Bowditch in violation of N.Y.C. Admin. Code § 8-107(7).

125. As described more fully above, Plaintiff Bowditch requested reasonable accommodations as the victim of a sexual offense.

126. Pursuant to N.Y.C. Admin. Code § 8-107(27), Defendant Fordham University was required to provide accommodations to Plaintiff Bowditch as the victim of sexual offense.

127. As described more fully above, Defendant Fordham University violation N.Y.C. Admin. Code § 8-107(27) by refusing to provide Plaintiff Bowditch with an accommodation.

128. As a direct and proximate cause of these violations, Plaintiff Bowditch suffered economic, physical, and emotional injuries.

**REQUEST FOR RELIEF**

Plaintiff respectfully requests that the Court enter judgment in his favor, and against Defendants, as follows:

**a.** That the Court award Plaintiff compensatory, consequential, general, and nominal damages in an amount to be determined at trial;

**b.** That the Court award punitive or exemplary damages in an amount to be determined at trial;

**c.** That the Court award to Plaintiff the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses;

a. That the Court award pre- and post-judgment interest at the maximum legal rate; and

b. That the Court grant all such other relief as it deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

Dated:  May 12, 2023

By: ___/s/ Joshua J. Lax___
Joshua J. Lax, Esq.
225 Broadway, Suite 715
New York, New York 10007
(212)566-6213